281 N.J. Super. 589 (1995)
658 A.2d 1326
RAYMOND T. PARKER, PLAINTIFF-APPELLANT, AND KAREN D. PARKER, PLAINTIFF,
v.
FLORENCE MARCUS, IRENE MAKRIS, EDGAR CARRIER, JR., AND LAURA BIANCHI, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 8, 1995.
Decided June 14, 1995.
*590 Before Judges PETRELLA, HAVEY and BROCHIN.
Paul L. Shapiro, attorney for appellant (Kimberly A. Bailey, on the brief; Mr. Shapiro on the reply letter-brief).
Catania and Harrington, attorneys for respondent Florence Marcus (William G. Robinson, on the brief).
Melli & Wright, P.C., attorneys for respondent Irene Makris (Sean M. Dillon, on the brief).
Harwood Lloyd, attorney for respondent Laura Bianchi (David T. Robertson, on the brief).
Respondent Edgar Carrier, Jr., did not file a brief.
The opinion of the court was delivered by HAVEY, J.A.D.
*591 Plaintiff Raymond T. Parker appeals from an order denying his application to vacate an order dismissing his personal injury action. The case was dismissed on December 18, 1991 when plaintiff's attorney failed to appear for an arbitration proceeding. The attorney did not tell plaintiff about the dismissal. When, in May 1994, plaintiff learned that the complaint had been dismissed, his new attorney made an application to reinstate the complaint. The motion judge denied the application and also plaintiff's motion for reconsideration without findings. We now reverse and remand with direction that the matter be reinstated to the trial calendar.
On December 23, 1988, plaintiff was a passenger in a vehicle operated by his wife, co-plaintiff, Karen D. Parker. While proceeding westbound on State Highway 4 in Paramus, the Parker vehicle was struck in the rear by a vehicle operated by defendant Irene Makris. According to plaintiff's complaint, his vehicle propelled forward, striking the rear of defendant Florence Marcus' vehicle which had stopped in the line of traffic. Plaintiff also alleges that the Makris vehicle had been struck in the rear by a vehicle operated by defendant Edgar Carrier, Jr., who in turn had been struck in the rear by a vehicle operated by defendant Laura Bianchi.
As a result of the accident, plaintiff sustained severe injuries to his back. He lost control of his left leg and foot and he still suffers pain and discomfort. He underwent an laminectomy and, according to his affidavit in support of his motion to reinstate, may be required to undergo another surgical procedure.
Within two weeks of the accident, plaintiff retained the services of a Teaneck attorney to represent him. Thereafter plaintiff received copies of letters from the attorney sent to various insurance companies and to plaintiff's treating physicians. The attorney filed plaintiff's complaint on December 21, 1990, two days before the statute of limitations would have run. The matter was listed for arbitration on December 18, 1991. The attorney failed to notify plaintiff of the hearing, and did not appear on plaintiff's *592 behalf. Thus, on that date, the matter was "dismissed for lack of prosecution." Plaintiff was not advised by his attorney that the case was dismissed.
Plaintiff claims that from 1989 through May 1994, he sent his attorney copies of medical bills, and requested information about the status of the case. The attorney advised him that "all was going well" and that the matter had not been scheduled because of a court backlog. In the beginning of May 1994, he pressed the attorney about the status of the case and was told by the attorney that trial of the matter was scheduled for May 22, 1994.
Because May 22, 1994 was a Sunday, plaintiff became concerned about the status of his case. He immediately went to the Bergen County Courthouse and determined that the matter had been dismissed in December 1991. He confronted the attorney who apologized to him for lying, and explained that he had numerous personal and ethical problems. He then turned the file over to plaintiff. The attorney carried no legal malpractice insurance and has since been disbarred.
Sometime before July 6, 1994, plaintiff retained his present counsel who, on that date, moved to reinstate the complaint. Plaintiff's application was denied, without oral argument, and without any findings by the motion judge. On plaintiff's motion for reconsideration, the judge expressed some concern about plaintiff's injury and the fact that he will be left without a remedy if the matter is not reinstated. Nevertheless, presumably persuaded by defense counsels' argument that defendants would be prejudiced because of the substantial passage of time from the date of the accident, the judge, again without findings, denied the motion.
Although not so expressed, plaintiff's motion was made pursuant to R. 4:50-1(f), the "catch-all" provision of the rule allowing relief from an order in "exceptional" cases. See Court Invest. Co. v. Perillo, 48 N.J. 334, 341, 225 A.2d 352 (1966). R. 4:50-1 is "`designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts *593 should have authority to avoid an unjust result in any given case.'" Baumann v. Marinaro, 95 N.J. 380, 392, 471 A.2d 395 (1984) (quoting Manning Eng'g, Inc. v. Hudson Cty. Park Comm'n, 74 N.J. 113, 120, 376 A.2d 1194 (1977)). Relief is available under subsection (f) of the rule "only when truly exceptional circumstances are present and only when the court is presented with a reason not included among any of the reasons" set forth in the other exceptions. Baumann, 95 N.J. at 395, 471 A.2d 395. "And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice.'" Housing Auth. of Morristown v. Little, 135 N.J. 274, 286, 639 A.2d 286 (1994), (quoting Court Invest. Co., 48 N.J. at 341, 225 A.2d 352). A motion for such relief under subsection (f) must be made within "a reasonable time." R. 4:50-2.
There is nothing unique about the issue presented here. Once again we are faced squarely with a motion to vacate a dismissal arising from the malpractice of the plaintiff's attorney. In that context, we have observed that, whether the motion for relief by the client is based on R. 4:50-1(f), or R. 1:1-2 (general rule of construction and relaxation of rules "to secure a just determination"), "`justice is the polestar and our procedures must ever be moulded and applied with that in mind.'" Jansson v. Fairleigh Dickinson Univ., 198 N.J. Super. 190, 195, 486 A.2d 920 (1985) (quoting New Jersey Highway Auth. v. Renner, 18 N.J. 485, 495, 114 A.2d 555 (1955)).
In Jansson, we identified the following "important factors" to be considered in deciding whether relief in such circumstances should be granted. They are: (1) the extent of the delay in making the application; (2) the underlying reason or cause; (3) the fault or blamelessness of the litigant; and (4) the prejudice that would accrue to the other party. Id. at 195, 486 A.2d 920. See also, Aujero v. Cirelli, 110 N.J. 566, 577, 542 A.2d 465 (1988). Plaintiffs' complaint in Jansson had been dismissed because their attorney failed to send answered interrogatories to defense counsel. 198 N.J. Super. at 193, 486 A.2d 920. Nearly three years *594 after dismissal, plaintiffs' new attorney moved to reinstate. Ibid. Applying the above-stated "important factors," we held that plaintiffs were entitled to relief because they "were, themselves, entirely blameless." Id. at 195, 486 A.2d 920. Despite the fact that the delay from the time of dismissal to the time of application for relief was substantial, we observed "[w]e believe that in the absence of demonstrable prejudice to the other party it is neither necessary nor proper to visit the sins of the attorney upon his blameless client." Id. at 196, 486 A.2d 920. See also, Audubon Volunteer Fire Co. No. 1 v. Church Constr. Co., Inc., 206 N.J. Super. 405, 406, 502 A.2d 1183 (1986) ("the shepherding function we serve is abused by unnecessarily closing the courtroom doors to a litigant whose only sin is to retain a lawyer who delays filing an answer during settlement negotiations").
As noted, the dismissal in Jansson was based on plaintiffs' failure to answer interrogatories. R. 4:23-5 has since been amended in accordance with the Court's directive in Aujero, 110 N.J. at 580-81, 542 A.2d 465, to provide for specific time periods and guidelines before dismissal of a complaint for failure to answer interrogatories is entered with prejudice. In view of the amendment to the rule, another panel of this court recently questioned whether Jansson "should continue to govern this discovery default problem." Albarran v. Lukas, 276 N.J. Super. 91, 95, 647 A.2d 476 (1994). We do not address the issue. Suffice it to say that the factors identified by Judge Baime in Jansson remain important guideposts in deciding whether relief should be granted, as here, when dismissal is for reasons unrelated to a discovery-rule violation.
Applying the Jansson factors here, we are convinced that plaintiff is entitled to relief. He made every effort to keep in contact with his attorney during the pendency of his case, and was assured that the matter had not been scheduled for trial because of a calendar backlog. When, in May 1994, plaintiff determined that the matter had been dismissed in December 1991, he fired his then attorney, obtained his file and immediately retained his *595 present counsel. The motion for relief was made in the beginning of July 1994. Thus, plaintiff's dilemma was not occasioned by his own dereliction or ambivalence concerning whether or not to proceed with the suit. The dismissal and its devastating effect on plaintiff rests squarely on the shoulders of his prior attorney, whose dereliction is unquestioned.
Moreover, dismissal here is the "ultimate sanction." Zaccardi v. Becker, 88 N.J. 245, 253, 440 A.2d 1329 (1982). Any claim against his disbarred and uninsured former attorney would undoubtedly be futile. Thus, plaintiff, who has sustained severe personal injuries, would be left without any viable remedy.
We recognize defendants' arguments that they will suffer prejudice if the complaint is reinstated. The accident occurred in December 1988. No doubt memories have faded and some witnesses to the accident may have become unavailable during the ensuing years. However, plaintiff, a passenger, was entirely without fault as to the cause of the accident. Thus, any liability issue involves the comparative fault of the defendant drivers. We are confident that, with discovery and proper utilization of the police report and records, the cause of the accident may be reconstructed for the purpose of settlement or adjudicating the issues of negligence and proximate cause.
Further, we are advised by plaintiff, without contradiction by defendants, that his medical records remain available. Indeed, plaintiff will be required to provide medical data concerning his injuries, and to furnish expert reports as part of discovery in support of his damage claim. See R. 4:17-1; R. 4:17-4(e). Moreover, plaintiff remains ready and willing to submit to depositions and medical examinations by defendants' experts. In short, we cannot conclude that defendants' claim of prejudice tips the scales in favor of depriving plaintiff of his day in court.
Reversed and remanded for further proceedings.