**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2137-23

IN THE MATTER OF
THE ESTATE OF
HELEN HAUKE, deceased,

and

IN THE MATTER OF
THE ESTATE OF
RUDOLPH HAUKE, deceased.

_____

Argued September 16, 2025 – Decided September 25, 2025

Before Judges Susswein and Chase.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. P-0383-23.

Paul R. Hauke, appellant, argued the cause pro se.

Marco A. Laracca argued the cause for respondents (Laracca Law Group, LLC, attorney; Kristen L. Laracca, on the brief).

PER CURIAM

Plaintiff Paul Hauke appeals from a February 9, 2024 Chancery Division order denying his order to show cause to vacate a 2016 consent order and granting defendants' cross-motion to dismiss. We affirm.

I.

We glean the following facts and procedural history from the record and our prior opinions: In re Hauke, No. A-4103-15 (App. Div. Jan. 29, 2018) (slip op. 1-9)("Hauke I"); In re Hauke, No. A-5200-17 (App. Div. Mar. 25, 2020) (slip op. 1-18) ("Hauke II"); and In re Hauke, No. A-4528-19 (App. Div. Jan. 31, 2022) (slip op. 1-17) ("Hauke III").

Rudolph Hauke[1] is the father of plaintiff, and defendants, Thomas Hauke, Gregory Hauke, and Richard Hauke[2] (collectively "defendants"). Rudolph died testate on October 10, 2011; their mother, Helen, died testate on March 27, 2012. Thomas and Gregory were initially appointed as co-executors of the parents' estates. Hauke III, at 2.

In January 2016, the court held a trial litigating Helen's estate. Hauke II, at 2-3. On the second day of trial, the parties settled and memorialized their

---

[1] Because all parties share a common surname, we refer to them by their first names. No disrespect is intended.

[2] Richard Hauke is not a party to this appeal.

agreement in a consent order—the subject of this appeal. As part of the consent order, the partes stipulated that they could file exceptions to the accountings. Additionally, the parties signed mutual general releases which included a covenant not to sue.

In May 2018, a hearing was held and the formal accountings of Helen and Rudolph's estates and trusts were approved. As part of the corresponding order, the trial court accepted several of plaintiff's exceptions. Subsequently, Thomas and Gregory appealed the surcharges. After an initial remand to determine if the release insulated Thomas and Gregory from the surcharges, the surcharges were upheld. See Hauke II, at 18; see also Hauke III, at 2. In June 2022, both estates and trusts were closed.

Plaintiff claims that sometime in mid-2023, while conducting research on a wrongful death settlement he filed on behalf of Rudolph against the drug maker of Pradaxa he found evidence that defendants paid themselves $51,000 "under the table."[3] Therefore, plaintiff believed the consent judgment ordering a $48,500 reduction of plaintiff's share of Helen's estate amounted to a duplicate payment to defendants.

---

[3] At oral argument, plaintiff stated that he found the documents while he was going thru his previous attorney's file.

A-2137-23

Plaintiff filed a verified complaint and order to show cause seeking:  (1) to keep one hundred percent of settlement proceeds from the Pradaxa settlement;[4] and (2) to vacate the January 7, 2016 consent judgment.  In lieu of filing an answer, defendants filed a cross-motion to dismiss the complaint.

On February 9, 2024, plaintiff's order to show cause was denied and defendants' cross-motion to dismiss was granted.  In a written statement of reasons, the court stated res judicata applied because the case was fully litigated, formal accountings were done, exceptions were filed by plaintiff, a trial was held, a judgment ordered, and an appeal followed, affirming the judgment.  Further, the court determined laches also barred plaintiff's claim because there was an eight-year, unexplained delay following the consent judgment.

This appeal followed.

## II.

Our review of a "Rule 4:6-2(e) motion[] to dismiss for failure to state a claim upon which relief can be granted [is] . . . de novo."  Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)).  In considering a Rule 4:6-2(e) motion, "[a] reviewing court must examine 'the legal

---

[4] This issue was withdrawn at the trial court and is not on appeal.

sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107). "The essential test [for determining the adequacy of a pleading] is simply 'whether a cause of action is "suggested" by the facts.'" Green v. Morgan Props., 215 N.J. 431, 451-52 (2013) (quoting Valentzas v. Colgate-Palmolive Co., 109 N.J. 198, 192 (1988)). "At this preliminary stage of the litigation the [c]ourt is not concerned with the ability of [the] plaintiffs to prove the allegation contained in the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989).

## III.

We begin with plaintiff's argument that the trial court erred in finding his complaint was barred by res judicata. The application of res judicata is a question of law and is reviewed de novo. Walker v. Choudhary, 425 N.J. Super. 135, 151 (App. Div. 2012) (quoting Selective Ins. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000)).

N.J.S.A. 3B:17-8, states that "[a] judgment allowing an account[ing] . . . shall be res judicata as to all exceptions which could or might have been taken to the account." Res judicata "'contemplates that when a controversy between parties is once fairly litigated and determined[,] it is no longer open to

A-2137-23

relitigation.'" Culver v. Ins. Co. of N. Am., 115 N.J. 451, 460 (1989) (quoting Lubliner v. Bd. of Alcoholic Beverage Control, 33 N.J. 428, 435 (1960)). "Th[is] rule precludes parties from relitigating substantially the same cause of action." Ibid. (quoting Kram v. Kram, 94 N.J. Super. 539, 551 (Ch. Div.1967), rev'd on other grounds, 98 N.J. Super. 274 (App. Div. 1967), aff'd, 52 N.J. 545 (1968)). Application of this doctrine "requires substantially similar or identical causes of action and issues, parties, and relief sought." Ibid.

"[F]or res judicata to apply, there must be (1) a final judgment by a court of competent jurisdiction, (2) identity of issues, (3) identity of parties, and (4) identity of the cause of action." Brookshire Equities, LLC v. Montaquiza, 346 N.J. Super. 310, 318 (App. Div. 2002). "For the purposes of res judicata, causes of action are deemed part of a single 'claim' if they arise out of the same transaction or occurrence." Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 413 (1991). If "a litigant seeks to remedy a single wrong, then that litigant should present all theories in the first action." Ibid.

Res judicata bars plaintiff's claim. There was: (1) a final judgement evinced by the May 2018 order; (2) this claim arises from the same set of facts; (3) deals with the same parties; and (4) arises out of the same transaction—the accountings of Helen's and Rudolph's estates and trusts. The court held an

6

extensive hearing, addressing each of plaintiff's numerous exceptions. The May 2018 judgment was entered following the hearing. An appeal followed in which the judgment approving the accountings was affirmed. The record is clear that this case has been fully litigated.

IV.

Plaintiff additionally contends the court erred by applying laches. He claims he has an "explainable and excusable delay in exercising his right." We are not persuaded.

Laches, is "an equitable doctrine, utilized to achieve fairness." Fox v. Millman, 210 N.J. 401, 422 (2012). "The time constraints for the application of laches 'are not fixed but are characteristically flexible.'" Knorr v. Smeal, 178 N.J. 169, 181 (2003) (quoting Lavin v. Bd. of Educ., 90 N.J. 145, 151 (1982)). Laches bars "the prosecution of an equitable claim if the suitor has inexplicably, inexcusably and unreasonably delayed pursuing a claim to the prejudice of another party." In re Est. of Thomas, 431 N.J. Super. 22, 30 (App. Div. 2013) (citing Knorr, 178 N.J. at 180-81). "[W]e often look for an analogous statute of limitations to determine whether there has been an inexcusable delay." Ibid.

The application of laches "depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Id. at 419. As such, our review of the application of laches is an abuse of discretion. United States v. Scurry, 193 N.J. 492, 504 (2008).

An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). "[A] trial court [also] mistakenly exercises its discretion when it 'fails to give appropriate deference to the principles' governing the motion" it is deciding. BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 124 (App. Div. 2021) (quoting Davis v. DND/Fidoreo, Inc., 317 N.J. Super. 92, 100-01 (App. Div 1998)).

For laches to be enforced, the delaying party must have had "sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith believing that the right had been abandoned." Knorr, 178 N.J. at 181. "The key factors to be considered in deciding whether to apply the doctrine are the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.'" Ibid. (quoting Lavin, 90

A-2137-23

N.J. at 152). "[W]hether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2012) (quoting Garrett v. General Motors Corp., 844 F.2d 559, 562 (8th Cir. 1988)).

The court did not abuse its discretion in finding that laches bars plaintiff's claims. There was nearly an eight-year delay in plaintiff filing this order to show cause. There is evidence in the record that this issue was discovered during 2016 accounting and also in plaintiff's attorneys file. As such, plaintiff had a duty to perform due diligence. Allowing plaintiff's claims to move forward would prejudice defendants who acted in good faith believing the estates had been fully settled.

V.

Lastly, plaintiff argues the trial court erred in not vacating the consent order per Rule 4:50-1(f). Because the court did not abuse its discretion, this argument is without merit. See Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994) ("holding review of a court's determination under Rule 4:50-1 is for abuse of discretion.")

Rule 4:50-1(f) permits courts to vacate judgments for "any other reason justifying relief from the operation of the judgment or order." "The [Rule] is

'designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (citation omitted). To determine whether exceptional circumstances exist to warrant relief, the court considers the following factors: "(1) the extent of the delay in making the application; (2) the underlying reason or cause; (3) the fault or blamelessness of the litigant; and (4) the prejudice that would accrue to the other party." Parker v. Marcus, 281 N.J. Super. 589, 593 (App. Div. 1995).

The court did not abuse its discretion in determining there were no exceptional circumstances that warranted relief. Plaintiff has had sufficient opportunity to assert his rights, and did so, as shown by the years of litigation involving Helen's and Rudolph's estates. With finality achieved—by consent, by hearing, by appeal, by closure—the interests of justice are not served by perpetual litigation.

To the extent we have not specifically addressed any other contentions raised by plaintiff, they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

10

A-2137-23